IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROLANDO CRENSHAW,<br><br>     Plaintiff,<br><br>v.<br><br>SPIRIT AIRLINES, INC., EDWARD M. CHRISTIE, H. MCINTYRE GARDNER, CARLTON D. DONAWAY, MARK B. DUNKERLEY, ROBERT D. JOHNSON, BARCLAY G. JONES, CHRISTINE P. RICHARDS, MYRNA M. SOTO, and DAWN M. ZIER,<br><br>     Defendants. | Case No:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Rolando Crenshaw ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.     This is an action against Spirit Airlines, Inc. ("Spirit" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Spirit by Frontier Group Holdings, Inc. ("Frontier").

2.     On March 11, 2022, Defendants caused to be filed with the SEC a Form S-4

Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

3. The Registration Statement, which recommends that Spirit shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Spirit's and Frontier's financial projections; (ii) the financial analyses performed by Spirit's financial advisors, Barclays Capital Inc. ("Barclays") and Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Proposed Transaction.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages occurred in this District, a substantial portion of the transactions and wrongs complained

of herein had an effect in this District, the Company transacts business in this District and/or the Company is incorporated in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Spirit common stock.

10. Defendant Spirit provides airline services. It serves 85 destinations in 16 countries in the United States, Latin America, and the Caribbean. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SAVE."

11. Defendant Edward M. Christie ("Christie") is President, Chief Executive Officer, and a director of the Company.

12. Defendant H. McIntyre Gardner ("Gardner") is Chairman of the Board of the Company.

13. Defendant Carlton D. Donaway ("Donaway") is a director of the Company.

14. Defendant Mark B. Dunkerley ("Dunkerley") is a director of the Company.

15. Defendant Robert D. Johnson ("Johnson") is a director of the Company.

16. Defendant Barclay G. Jones ("Jones") is a director of the Company.

17. Defendant Christine P. Richards ("Richards") is a director of the Company.

18. Defendant Myrna M. Soto ("Soto") is a director of the Company.

19. Defendant Dawn M. Zier ("Zier") is a director of the Company.

20. Defendants Christie, Gardner, Donaway, Dunkerley, Johnson, Jones, Richards, Soto, and Zier are collectively referred to herein as the "Individual Defendants."

21. Defendants Spirit and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. On February 7, 2022, Spirit and Frontier announced a definitive merger agreement under which the companies would combine. Under the terms of the merger agreement, Spirit shareholders will receive 1.9126 shares of Frontier plus $2.13 in cash for each existing Spirit share they own. The press release announcing the Proposed Transaction states, in pertinent part:

**Frontier Airlines and Spirit Airlines to Combine, Creating America's Most Competitive Ultra-Low Fare Airline**

*February 07, 2022 06:30 ET | Source: Frontier Airlines, Inc.*

*Highly Complementary Networks to Serve Over 145 Destinations Across the United States, Latin America and the Caribbean*

*Consumers Win With $1 Billion in Annual Savings and Even More Ultra-Low Fares to More Places*

*Combined Airline to Drive Competition and Expand Service to Underserved Small and Mid-Sized Cities Across the United States*

*Combined Fleet Will Be the Youngest, Most Fuel-Efficient and Greenest in the United States*

*Combination Provides Better Opportunities and More Stability for 15,000 Professionals, Adding 10,000 Direct Jobs by 2026*

*Conference Call to Discuss Transaction Today at 6:30 AM MT / 8:30 AM ET*

DENVER, Colo. and MIRAMAR, Fla., Feb. 07, 2022 (GLOBE NEWSWIRE) -- Spirit Airlines, Inc. ("Spirit") (NYSE: SAVE) and Frontier Group Holdings, Inc.

4

("Frontier") (NASDAQ: ULCC), parent company of Frontier Airlines, Inc., today announced a definitive merger agreement under which the companies will combine, creating America's most competitive ultra-low fare airline.

\* \* \*

Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Spirit equity holders will receive 1.9126 shares of Frontier plus $2.13 in cash for each existing Spirit share they own. This implies a value of $25.83 per Spirit share at Frontier's closing stock price of $12.39 on February 4, 2022, representing a premium of 19% over the February 4, 2022, closing price of Spirit, and a 26% premium based on the 30 trading-day volume-weighted average prices of Frontier and Spirit. The transaction values Spirit at a fully diluted equity value of $2.9 billion, and a transaction value of $6.6 billion when accounting for the assumption of net debt and operating lease liabilities.

Upon closing of the transaction, existing Frontier equity holders will own approximately 51.5% and existing Spirit equity holders will own approximately 48.5% of the combined airline, on a fully diluted basis, providing both Frontier and Spirit equity holders with substantial upside potential.

**Bringing Our Airlines Together – Governance and Timing to Completion**

The Board of Directors for the new airline will be comprised of 12 directors (including the CEO), seven of whom will be named by Frontier and five of whom will be named by Spirit. Mr. Franke will be Chairman of the Board of the combined company.

The merger is expected to close in the second half of 2022, subject to satisfaction of customary closing conditions, including completion of the regulatory review process and approval by Spirit stockholders. Frontier's controlling stockholder has approved the transaction and related issuance of shares of Frontier common stock upon signing of the merger agreement. The combined company's management team, branding and headquarters will be determined by a committee led by Mr. Franke prior to close.

\* \* \*

**Advisors**

Citigroup Global Markets Inc. is serving as financial advisor and Latham & Watkins, LLP is serving as legal advisor to Frontier. Barclays and Morgan Stanley & Co. LLC are serving as financial advisors and Debevoise & Plimpton LLP is serving as legal advisor to Spirit.

\* \* \*

**About Frontier Airlines**

Frontier Airlines (NASDAQ: ULCC) is committed to "Low Fares Done Right." Headquartered in Denver, Colorado, the company operates more than 110 A320 family aircraft and has the largest A320neo fleet in the U.S. The use of these aircraft, Frontier's seating configuration, weight-saving tactics and baggage process have all contributed to the airline's average of 43 percent fuel savings compared to other U.S. airlines (fuel savings is based on Frontier Airlines' 2019 fuel consumption per seat-mile compared to the weighted average of major U.S. airlines), which makes Frontier the most fuel-efficient U.S. airline. With over 230 new Airbus planes on order, Frontier will continue to grow to deliver on the mission of providing affordable travel across America.

**About Spirit Airlines**

Spirit Airlines (NYSE: SAVE) is committed to delivering the best value in the sky. We are the leader in providing customizable travel options starting with an unbundled fare. This allows our Guests to pay only for the options they choose — like bags, seat assignments and refreshments — something we call Á La Smarte. We make it possible for our Guests to venture further and discover more than ever before. Our Fit Fleet® is one of the youngest and most fuel-efficient in the U.S. We serve destinations throughout the U.S., Latin America and the Caribbean, and are dedicated to giving back and improving those communities. Come save with us at spirit.com.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Registration Statement, which recommends that Spirit shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Spirit's and Frontier's financial projections; (ii) the financial analyses performed by Barclays and Morgan Stanley in connection with their fairness opinions; and (iii) potential conflicts of interest involving Company insiders.

24.     As a result of the omission of the material information (referenced below), the following sections of the Registration Statement are false and misleading, among others: (i) Spirit's Reasons for the Merger; Recommendation of the Spirit Board of Directors; (ii) Opinion of Barclays Capital Inc.; (iii) Opinion of Morgan Stanley & Co. LLC; and (iv) Unaudited Prospective

6

Financial Information.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Spirit shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions of Spirit's and Frontier's Financial Projections**

26. The Registration Statement omits material information of Spirit's and Frontier's financial projections.

27. The Registration Statement fails to disclose the following concerning Spirit's and Frontier's financial projections: (1) all line items underlying the financial projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Spirit and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions of Barclays' and Morgan Stanley's Analyses

30. In connection with the Proposed Transaction, the Registration Statement omits material information of analyses performed by Barclays and Morgan Stanley.

31. The valuation methods, underlying assumptions, and key inputs used by Barclays and Morgan Stanley in rendering their purported fairness opinions must be fairly disclosed to the Company's shareholders. The description of their fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses.

32. Without the information described below, the Company's shareholders are unable to fully understand Barclays' and Morgan Stanley's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

33. The below-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**A. Barclays' Analyses**

34. The Registration Statement fails to disclose the individual multiples and financial metrics of each company Barclays observed in its "*Selected Comparable Company Analysis*."

35. With respect to Barclays' "*Discounted Cash Flow Analysis - Spirit Standalone Valuation*," the Registration Statement fails to disclose: (1) the terminal value of Spirit as of December 31, 2026; (2) the individual inputs and assumptions underlying the (i) range of multiples of 5.5x to 7.5x, and (ii) discount rates of 9.0% to 11.0%; (3) the estimated total debt and cash of the Company as of December 31, 2021; and (4) the fully diluted number of shares of Spirit common stock.

36. With respect to Barclays' "*Discounted Cash Flow Analysis - Frontier Standalone Valuation*," the Registration Statement fails to disclose: (1) the terminal value of Frontier as of

December 31, 2026; (2) the individual inputs and assumptions underlying the (i) range of multiples of 5.5x to 7.5x, and (ii) discount rates of 9.0% to 11.0%; (3) the estimated total debt and cash of Frontier as of December 31, 2021; and (4) the fully diluted number of shares of Frontier common stock.

37. With respect to Barclays' "*Research Analyst Price Targets*" analysis, the Registration Statement fails to disclose: (1) the individual price targets observed by Barclays in its analysis; and (2) the sources thereof.

### B. Morgan Stanley's Analyses

38. With respect to Morgan Stanley's "*Spirit Discounted Cash Flow Analysis*," the Registration Statement fails to disclose: (1) the terminal values for Spirit; (2) the individual inputs and assumptions underlying the (i) range of multiples of Adj. EV / EBITDAR of 5.5x to 7.0x, and (ii) range of discount rates from 9.8% to 11.4%; and (3) the number of fully diluted shares of Spirit common stock outstanding as of February 4, 2022.

39. With respect to Morgan Stanley's "*Frontier Discounted Cash Flow Analysis*," the Registration Statement fails to disclose: (1) the terminal values for Frontier; (2) the individual inputs and assumptions underlying the (i) range of multiples of Adj. EV / EBITDAR of 5.5x to 7.0x, and (ii) range of discount rates from 9.5% to 11.2%; and (3) the number of fully diluted shares of Frontier common stock outstanding as of February 4, 2022.

40. With respect to Morgan Stanley's "*Spirit Discounted Equity Value Analysis*" and "*Frontier Discounted Equity Value Analysis*," the Registration Statement fails to disclose the individual inputs and assumptions underlying the (i) range of multiples of Adj. EV / EBITDAR for the 12-month period following January 1, 2025 of 5.0x to 6.5x, (ii) range of multiples of P / E for the 12-month period following January 1, 2025 of 9.0x to 11.0x, and (iii) discount rate of

12.0% and 11.1%.

41. With respect to Morgan Stanley's "*Discounted Analyst Price Targets*" analysis, the Registration Statement fails to disclose: (1) the individual price targets observed by Morgan Stanley in its analysis; (2) the sources thereof; and (3) the individual inputs and assumptions underlying the discount rates for Spirit of 12.0% and for Frontier of 11.1%.

### 3. Material Omissions of Company Insiders' Potential Conflicts of Interest

42. The Registration Statement omits material information of potential conflicts of interest involving Company insiders.

43. The Registration Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

49. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

56. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Case 1:22-cv-00358-RGA   Document 1   Filed 03/21/22   Page 13 of 14 PageID #: 13

Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

13

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 21, 2022        Respectfully submitted,

                **FARNAN LLP**

                /s/ Michael J. Farnan
                Brian E. Farnan (Bar No. 4089)
                Michael J. Farnan (Bar No. 5165)
                919 N. Market Street, 12th Floor
                Wilmington DE 19801
                Telephone: (302) 777-0300
                Facsimile: (302) 777-0301
                bfarnan@farnanlaw.com
                mfarnan@farnanlaw.com

                *Counsel for Plaintiff*